UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| HEATHER C.,<br><br>　　　　　　　　　　Plaintiff,<br><br>v.<br><br>ANDREW SAUL, Commissioner of Social Security,<br><br>　　　　　　　　　　Defendant. | Case No.: 3:19-cv-01669-AJB-RNB<br><br>**REPORT AND RECOMMENDATION REGARDING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**<br><br>**(ECF No. 15)** |

This Report and Recommendation is submitted to the Honorable Anthony J. Battaglia, United States District Judge, pursuant to 28 U.S.C. § 636(b)(1) and Civil Local Rule 72.1(c) of the United States District Court for the Southern District of California.

On September 3, 2019, plaintiff filed a Complaint pursuant to 42 U.S.C. § 405(g) seeking judicial review of a decision by the Commissioner of Social Security denying her application for a period of disability and disability insurance benefits. (ECF No. 1.) On January 11, 2020, plaintiff filed a motion for summary judgment. (ECF No. 15.) In accordance with Civil Local Rule 7.1(e)(6)(e), the Commissioner filed opposition to plaintiff's motion on February 18, 2020 (ECF No. 17), and plaintiff filed a reply thereto on March 2, 2020 (ECF No. 19).

Thus, this matter now is ready for decision. For the reasons set forth herein, the Court **RECOMMENDS** that plaintiff's motion for summary judgment be **DENIED**, and that Judgment be entered affirming the decision of the Commissioner and dismissing this action with prejudice.

## PROCEDURAL BACKGROUND

On May 11, 2016, plaintiff filed an application for a period of disability and disability insurance benefits, alleging disability beginning July 13, 2015. (Certified Administrative Record ["AR"]) 174-80.) Her application was denied initially and upon reconsideration. (AR 114-18, 120-24.)

On December 7, 2016, plaintiff requested a hearing before an administrative law judge ("ALJ"). (AR 125-26.) The hearing was held on July 30, 2018. Plaintiff appeared with counsel, and testimony was taken from her and a vocational expert ("VE"), who participated telephonically. (*See* AR 39-87.) The ALJ issued a decision on October 23, 2018, finding that plaintiff was not disabled for purposes of her benefits application. (AR 14, 16-27.)

Thereafter, on December 3, 2018, plaintiff requested review of the decision by the Appeals Council. (AR 172-73.) The ALJ's decision became the final decision of the Commissioner on August 26, 2019, when the Appeals Council denied plaintiff's request for review. (AR 1-6.) This timely civil action followed.

## SUMMARY OF THE ALJ'S FINDINGS

In rendering his decision, the ALJ followed the Commissioner's five-step sequential evaluation process. *See* 20 C.F.R. § 404.1520.[1]

---

[1] Unless otherwise indicated, all references herein to the Commissioner's regulations are to the regulations in effect at the time of the ALJ's decision.

| | |
|---|---|
| 1 | At step one, the ALJ found that plaintiff had not engaged in substantial gainful |
| 2 | activity since July 13, 2015, the alleged onset date. (AR 17.) |
| 3 | At step two, the ALJ found that plaintiff had the following severe medically |
| 4 | determinable impairments: cervical degenerative disc disease, depressive disorder, and |
| 5 | anxiety disorder. (AR 18.) As part of his step two determination, the ALJ further found |
| 6 | that plaintiff had other medically determinable physical impairments (headaches and |
| 7 | obesity) that were non-severe. (*Id.*) |
| 8 | At step three, the ALJ found that plaintiff did not have an impairment or combination |
| 9 | of impairments that met or medically equaled the severity of one of the impairments listed |
| 10 | in the Commissioner's Listing of Impairments. (AR 19.) |
| 11 | Next, the ALJ determined that plaintiff had the residual functional capacity ("RFC") |
| 12 | to perform light work as defined in 20 C.F.R. § 404.1567(b), |

> "except with occasional climbing of stairs and ramps; no climbing of ladders, scaffolds, and ropes; occasional balancing, stooping, kneeling crouching, and crawling; limited to understanding, remembering, and carrying out simple, routine, repetitive tasks with the need for standard industry work breaks every two hours; no interaction with the public; and occasional work-related, non-personal, non-social interaction with coworkers and supervisors involving no more than a brief exchange of information or hand-off of product." (AR 20.)

For purposes of his step four determination, the ALJ adduced and accepted the VE's testimony that a hypothetical person with plaintiff's vocational profile and RFC would not be able to perform the requirements of plaintiff's past relevant work as a bank branch manager. Accordingly, the ALJ found that plaintiff was unable to perform any past relevant work. (AR 25.)

The ALJ then proceeded to step five of the sequential evaluation process. Based on the VE's testimony that a hypothetical person with plaintiff's vocational profile and RFC could perform the requirements of representative occupations that existed in significant numbers in the national economy such as a document preparer and garment sorter, the ALJ

found that plaintiff had not been under a disability, as defined in the Social Security Act, from July 13, 2015, through the date of the ALJ's decision. (AR 26-27.)

**PLAINTIFF'S CLAIMS OF ERROR**

As best the Court can discern from plaintiff's summary judgment motion, plaintiff is claiming that the ALJ committed reversible error in the following respects:

1. The ALJ failed to accord proper weight to the "opinion" of plaintiff's treating psychiatrist reflected in Exhibit 18F (AR 603). (*See* ECF No. 15-1 at 17-19; ECF No. 19 at 4-5.)

2. In evaluating plaintiff's mental impairments, the ALJ failed to follow the "special technique" mandated by 20 C.F.R. § 404.1520(a) and he failed in his duty to develop the record. (*See* ECF No. 15-1 at 20; ECF No. 19 at 5-6.)

3. The ALJ failed to properly consider plaintiff's subjective symptom testimony. (*See* ECF No. 15-1 at 21-26; ECF No. 19 at 6-7.)

4. The ALJ erred by relying on the VE's testimony at step five of the Commissioner's sequential evaluation process when he failed to reconcile the apparent conflict between the VE's testimony and the reasoning level requirements of the garment sorter and document preparer jobs according to the Dictionary of Occupational Titles ("DOT"). (*See* ECF No. 15-1 at 27-28; ECF No. 19 at 7-8.)

**STANDARD OF REVIEW**

Under 42 U.S.C. § 405(g), this Court reviews the Commissioner's decision to determine whether the Commissioner's findings are supported by substantial evidence and whether the proper legal standards were applied. *DeLorme v. Sullivan*, 924 F.2d 841, 846 (9th Cir. 1991). Substantial evidence means "more than a mere scintilla" but less than a preponderance. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Desrosiers v. Sec'y of Health & Human Servs.*, 846 F.2d 573, 575-76 (9th Cir. 1988). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a

conclusion." *Richardson*, 402 U.S. at 401. The Court must review the record as a whole and consider adverse as well as supporting evidence. *Green v. Heckler*, 803 F.2d 528, 529-30 (9th Cir. 1986). Where evidence is susceptible of more than one rational interpretation, the Commissioner's decision must be upheld. *Gallant v. Heckler*, 753 F.2d 1450, 1452 (9th Cir. 1984).

## DISCUSSION

**A.** **Reversal is not warranted based on the ALJ's alleged failure to accord proper weight to the "opinion" of plaintiff's treating psychiatrist reflected in Exhibit 18F.**

Plaintiff contends that the ALJ erred when he failed to give "great weight" to the "opinion" of plaintiff's treating psychiatrist, Dr. Heidenfelder, reflected in Exhibit 18F. Exhibit 18F is a one-page document dated July 23, 2018 and signed by Dr. Heidenfelder. The document was addressed "To Whom It May Concern," and stated the following: "I am writing to confirm that I am treating [plaintiff] for Major Depression and Generalized Anxiety Disorder. Please contact my office for any further information as needed." (AR 603.)

In his decision, the ALJ stated that he was not assigning any weight to Exhibit 18F because it was not a medical opinion that required evaluation. (*See* AR 25.) The Court finds that the ALJ did not err in this regard. In the exhibit, Dr. Heidenfelder merely was advising of the mental impairments for which he was treating plaintiff, which the ALJ did find qualified as "severe" impairments.[2] Dr. Heidenfelder was not purporting to render an

---

[2] Step two of the Commissioner's sequential evaluation process requires the ALJ to determine the medical severity of the claimant's medically determinable impairments. *See* 20 C.F.R. § 404.1520(a)(4)(ii). The Social Security Regulations and Rulings, as well as case law applying them, discuss the step two severity determination in terms of what is "not severe." Under the Commissioner's regulations, an impairment is not severe "if it does not significantly limit [the claimant's] physical or mental ability to do basic work

opinion on whether plaintiff's mental impairments rendered her unable to perform gainful employment or an opinion on whether plaintiff's mental impairments caused any functional limitations. *See Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 601 (9th Cir. 1999) (ALJ not required to credit medical evidence that did not show how a claimant's symptoms "translate into specific functional deficits which preclude work activity"); *see also Youngblood v. Berryhill*, 734 F. App'x 496, 498 (9th Cir. 2018) ("An ALJ does not err by not incorporating a physician's opinion when the physician had not 'assign[ed] any specific limitations on the claimant.'" (citing *Turner v. Comm'r of Soc. Sec.*, 613 F.3d 1217, 1223 (9th Cir. 2010)).

**B.** **Reversal is not warranted based on the ALJ's alleged failure to follow the "special technique" mandated by 20 C.F.R. § 404.1520(a) and/or the ALJ's alleged failure to develop the record with respect to plaintiff's mental impairments.**

*1. The ALJ did not fail to follow the "special technique mandated by 20 C.F.R. § 404.1520(a).*

Under the Commissioner's regulations, to determine whether a claimant has a severe *mental* impairment at step two of the sequential evaluation process, an ALJ must follow a "special technique." *See* 20 C.F.R. § 404.1520a(a). This entails the following steps: determining whether the claimant has any medically determinable mental impairments; rating the degree of functional limitation resulting from the mental impairment(s) in four broad functional areas; determining the severity of the mental impairment(s); and then, if

---

activities." *See* 20 C.F.R. § 404.1522(a). Basic work activities are "the abilities and aptitudes necessary to do most jobs," including mental activities such as understanding, carrying out, and remembering simple instructions; use of judgment; responding appropriately to supervision, co-workers, and usual work situations; and dealing with changes in a routine work setting. *See* 20 C.F.R. § 404.1522(b); *see also* SSR 85-28.

6

any of the mental impairments is severe, proceeding to step three of the sequential evaluation process. *See* 20 C.F.R. § 404.1520a(b)-(d).

The four broad functional areas are: understand, remember, or apply information; interact with others; concentrate, persist, or maintain pace; and adapt or manage oneself. *See* 20 C.F.R. § 404.1520a(c)(3). In rating the degree of limitation in these areas, the following five-point scale is utilized: None, mild, moderate, marked, and extreme. *See* 20 C.F.R. § 404.1520a(c)(4). Under the Commissioner's regulations, if the degrees of limitation are rated as "none" or "mild," the impairment generally is considered not severe, "unless the evidence otherwise indicates that there is more than a minimal limitation in your ability to do basic work activities." *See* 20 C.F.R. § 404.1520a(d)(1).

Here, the ALJ did find at step two of the sequential evaluation process that plaintiff's medically determinable mental impairments of depressive disorder and anxiety disorder qualified as severe, and did then proceed to step three of the sequential evaluation process. (See AR 18, 19-20.) Accordingly, the Court fails even to see the point of plaintiff's contention that the ALJ erred by failing to follow the "special technique." In any event, the ALJ's decision reflects that he did follow the "special technique." In the part of his decision relating to his listings determination at step three of the sequential evaluation process,[3] the ALJ rated the degree of functional limitation resulting from plaintiff's mental impairments in each of the four broad functional areas as "moderate." (*See* AR 19-20.)

The Court therefore finds that reversal is not warranted based on the ALJ's alleged failure to follow the "special technique" mandated by 20 C.F.R. § 404.1520(a).

---

[3] Under the Commissioner's regulations, the determination of whether a claimant has met the listing for a mental impairment also requires consideration of the ratings in the four broad functional areas. As the ALJ noted (*see* AR 19), to satisfy the criteria for Listing 12.04 (which encompasses depressive disorders) and Listing 12.06 (which encompasses anxiety disorders), the mental impairments must result *inter alia* in at least one extreme or two marked limitations in the four broad functional areas.

### 2. *The ALJ did not fail in his duty to develop the record.*

It is well established in the Ninth Circuit that the ALJ has a special duty to fully and fairly develop the record and to assure that the claimant's interests are considered, and that this special duty exists even when the claimant is represented by counsel. *See, e.g., Garcia v. Comm'r of Soc. Sec.*, 768 F.3d 925, 930 (9th Cir. 2014); *Tonapetyan v. Halter,* 242 F.3d 1144, 1150 (9th Cir. 2001); *Smolen v. Chater*, 80 F.3d 1273, 1288 (9th Cir. 1996)*; Brown v. Heckler,* 713 F.2d 441, 443 (9th Cir. 1983). However, it remains the claimant's duty to prove that he/she is disabled. *See Mayes v. Massanari*, 276 F.3d 453, 459 (9th Cir. 2001); *Clem v. Sullivan*, 894 F.2d 328, 330 (9th Cir. 1990). As noted in *Mayes*, 276 F.3d at 459-60, an ALJ's duty to develop the record further is triggered only when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence.

Here, plaintiff has done a wholly inadequate job of articulating her argument that the ALJ failed in his duty to develop the record. Plaintiff has failed to specify what additional medical evidence relating to her mental impairments existed but was omitted from the record, what ambiguous evidence supposedly triggered the duty to further develop the record, or in what respects the record supposedly was inadequate to allow for proper evaluation of the evidence. In any event, the Court finds that the ALJ fulfilled his duty to develop the record when he sent plaintiff a pre-hearing notice instructing her to submit all evidence known to her that related to her disability claim and advising her of her right to request a subpoena for additional records (*see* AR 149, 150), when he admitted into the record the evidence that plaintiff had untimely submitted (*see* AR 14), and when he acceded to plaintiff's counsel's request to hold the record open for two weeks following the administrative hearing to allow plaintiff to submit additional medical records (*see* AR 85-86). *See Conner v. Colvin*, 674 F. App'x 629, 630 (9th Cir. 2017) (holding the ALJ satisfied the duty to develop the record where the ALJ sent notices prior to the hearing instructing the claimant to submit probative evidence and left the record open for 30-days post-hearing to give the claimant a chance to supplement the record); *Tonapetyan*, 242 F.3d at 1150 ("The ALJ may discharge his duty to develop the record in several ways, including:

subpoenaing the claimant's physicians, submitting questions to the claimant's physicians, continuing the hearing, or keeping the record open after the hearing to allow supplementation of the record."); *Tidwell v. Apfel*, 161 F.3d 599, 602 (9th Cir. 1998) (holding that ALJ satisfied any duty to develop record by requesting additional records from claimant and her counsel, and by keeping post-hearing record open for supplemental medical evidence).

Insofar as plaintiff is contending as part of this claim that the ALJ's finding that she has mild to moderate mental limitations was based on insufficient evidence, the Court disagrees. Contrary to plaintiff's contention that the ALJ did not review her mental health records, the ALJ's decision reflects that he did consider the medical records concerning plaintiff's mental health treatment provided by her primary care physician, Dr. Green (Exhs. 6F, 14F, 15F, and 16F) and by her treating psychiatrist, Dr. Heidenfelder (Exhs. 3F and 18F). (*See* AR 23, 25.)[4] Indeed, the last time plaintiff saw Dr. Heidenfelder, which was on June 1, 2016, Dr. Heidenfelder himself characterized both plaintiff's depression and her anxiety as "mild-moderate." (*See* AR 344-45.) Moreover, Dr. Heidenfelder's treatment notes reflect that, throughout the period he treated her, plaintiff presented with largely normal mental status findings, including "intact" memory and recall, and "intact" attention and concentration. (*See* AR 344, 350, 353, 356.) Finally, the Court concurs with the Commissioner that the ALJ's finding that plaintiff has mild to moderate mental limitations also was supported by the opinions of the State agency psychological consultants, who opined based on their review of plaintiff's medical records that her mental impairments caused only mild limitations. (*See* AR 93-94, 104-06.)

Accordingly, the Court finds that reversal is not warranted based on the ALJ's alleged failure to develop the record.

---

[4] Although the ALJ did not specifically reference Exh. 10F, the treating notes of Dr. Heidenfelder contained in that exhibit are all contained in Exh. 3F. (*Compare* AR 539-52 *to* AR 349-60.)

## C. Reversal is not warranted based on the ALJ's alleged failure to properly consider plaintiff's subjective symptom testimony.

*1. Summary of plaintiff's subjective symptom testimony at the administrative hearing*

At the administrative hearing, plaintiff testified that her physical impairments were what caused her to stop working; and that her psychological impairments had increased, but she attributed this to her increase in physical symptoms. (AR 49.) She further testified that she had problems straightening her neck, with pain down the sides of her neck, from her spine to her waist. (AR 50.) In addition, she had a constant headache caused by nerve pain. (*Id.*) Plaintiff acknowledged that her January 2017 fusion surgery had helped her symptoms, as it allowed her to stop taking her prescribed opiates for pain and to manage her pain with only over-the-counter ibuprofen. (AR 56-57.)

Plaintiff estimated that, in a workday, she could stand and walk for up to five hours, and that she could sit for up to two hours. (AR 57-58.) However, she would need to lie down during the day in intervals totaling at least three hours. (AR 59.) She also claimed that she was confined to bed approximately two times a week due to pain. (AR 60.) She further testified that the tingling in her fingers made it difficult to push buttons, to grasp small items, and that this tingling caused her to drop items. (AR 60-61.) She said that she could bend over, crouch, stoop, and crawl, but she was limited to doing so just five to six times a day. (AR 62.) She also claimed that, on a typical day, her pain level was at a 3 to 4 on a scale of 1 to 10, but it increased to a 6 or 7 by the end of the day. (AR 74.)

When questioned about her psychological impairments, plaintiff testified that she had difficulty concentrating, focusing, and remembering things. (AR 67.) She maintained that this affected her personal relationships, as she was unable to remember the things people told her and unable to remember their names. (AR 68.) She also claimed to have difficulties taking care of herself, which made her not want to see people, and to have daily crying spells, sometimes in public. (AR 69, 72.) Plaintiff further testified that she had

been prescribed a number of psychiatric medications, which caused her to become angry as a side effect and increased her thoughts of depression. (AR 73.) Plaintiff claimed that she was unable to perform sedentary work because she did not have the capacity to concentrate on even simple instructions, and the pain that she experienced would cause her not to perform as expected. (AR 74.)

### 2. *Law applicable to consideration of subjective symptom testimony*

An ALJ's assessment of pain severity and claimant credibility is entitled to "great weight." *See Weetman v. Sullivan*, 877 F.2d 20, 22 (9th Cir. 1989); *Nyman v. Heckler*, 779 F.2d 528, 531 (9th Cir. 1986). Under the "*Cotton* standard," where the claimant has produced objective medical evidence of an impairment which could reasonably be expected to produce some degree of pain and/or other symptoms, and the record is devoid of any affirmative evidence of malingering, the ALJ may reject the claimant's testimony regarding the severity of the claimant's pain and/or other symptoms only if the ALJ makes specific findings stating clear and convincing reasons for doing so. *See Cotton v. Bowen*, 799 F.2d 1403, 1407 (9th Cir. 1986); *see also Smolen*, 80 F.3d at 1281; *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993); *Bunnell v. Sullivan*, 947 F.2d 341, 343 (9th Cir. 1991).

Here, after summarizing plaintiff's subjective symptom testimony, the ALJ stated:

> "After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." (AR 22.)

Since the ALJ did not make an express finding of malingering or cite any evidence of malingering, the issue before the Court is whether the ALJ provided reasons for his adverse credibility determination that satisfy the standard set forth above. *See Vasquez v. Astrue*, 572 F.3d 586, 592 (9th Cir. 2009) ("clear and convincing' standard applies where ALJ did not cite any evidence of malingering); *Robbins v. Social Sec. Admin.*, 466 F.3d

11

880, 883 (9th Cir. 2006) ("[U]nless an ALJ makes a finding of malingering based on affirmative evidence thereof, he or she may only find an applicant not credible by making specific findings as to credibility and stating clear and convincing reasons for each.").

*3. Analysis*

Preliminarily, the Court notes that the ALJ did partially credit plaintiff's subjective symptom testimony. As stated in the decision, the ALJ accommodated the symptoms caused by plaintiff's degenerative disc disease by limiting plaintiff's RFC to light work, with only occasional climbing of stairs and ramps; no climbing of ladders, scaffolds, and ropes; and only occasional balancing, stooping, kneeling, crouching, and crawling. (AR 25.) The ALJ also accommodated the symptoms caused by plaintiff's mental impairments by limiting plaintiff's RFC to understanding, remembering, and carrying out simple, routine, repetitive tasks with the need for standard industry breaks every two hours; no interaction with the public; and only occasional work- related, non-personal, non-social interaction with coworkers and supervisors involving no more than a brief exchange of information or hand-off of product. (*Id.*)

The ALJ's primary rationale for not crediting plaintiff's testimony to the effect that her physical and mental impairments were of disabling severity during the period at issue was that her allegations were undermined by her continued engagement in a large number of activities of daily living. Plaintiff had acknowledged in her adult function report that she helped her child prepare for school and otherwise cared for her, prepared her own meals daily, performed household chores, drove her car and could do so alone, and shopped in stores and online. (*See* AR 23, citing AR 233-46.) The Court finds that this reason constituted a legally sufficient reason upon which the ALJ could properly rely in support of his adverse credibility determination. *See Curry v. Sullivan*, 925 F.2d 1127, 1130 (9th Cir. 1991) (ability to take care of personal needs, prepare easy meals, do light housework and shop for some groceries "may be seen as inconsistent with the presence of a condition which would preclude all work activity"); *see also, e.g.*, *Thomas v. Barnhart*, 278 F.3d

947, 958-59 (9th Cir. 2002) (ALJ may properly rely on inconsistencies between claimant's testimony and claimant's daily activities); *Morgan*, 169 F.3d at 600 (ALJ may properly rely on contradictions between claimant's reported limitations and claimant's daily activities).

With respect to plaintiff's subjective symptom testimony relating to her degenerative disc disease, the ALJ's adverse credibility determination also was based the evidence of improvement in plaintiff's mobility and pain following her physical therapy treatment. The ALJ noted in this regard that, during her initial February 2017 physical therapy visit following her surgery, plaintiff was noted to have pain in her neck at a three on a ten-point scale, with ten being the most severe, despite pain management with hydrocodone. (Ex. 19F/14). Plaintiff also was noted to have back pain at a five on this same scale. However, by her June 2017 discharge, plaintiff had reported improvements in mobility and pain, and reported that she would like to return to softball, tennis, and hiking. (*See* AR 23, citing AR 617, 641.) The ALJ further noted that plaintiff had not returned to physical therapy since June 2017. (AR 23.) Plaintiff's apparent improvement with treatment also constituted a legally sufficient reason on which the ALJ could properly rely in support of his adverse credibility determination. *See Odle v. Heckler*, 707 F.2d 439, 440 (9th Cir. 1983) (ALJ may consider whether treatment produced fair response or control of pain that was satisfactory).

In addition, the ALJ noted that plaintiff had visited a pain management clinic consistently through 2017 and in early 2018, to address her back pain. During a March 2017 visit, shortly after her spinal surgery, plaintiff had been managing her back pain with Norco, 1 tablet as needed, and over-the- counter anti-inflammatory medication. However, during her most recent visit in January 2018, although plaintiff had reported her pain as "not tolerable," she also had reported pain at only a three on a ten-point scale, with ten being the most severe, despite having weaned herself entirely off prescription pain medication and managing her symptoms with only over-the-counter medication. In other words, plaintiff was able to tolerate her pain to the extent that she chose not to manage her

13

pain with prescription pain medication. (*See* AR 23, citing AR 560-77.) In general, "evidence of conservative treatment is sufficient to discount a claimant's testimony regarding severity of an impairment," and a prominent example of conservative treatment is use of only over-the-counter pain medication. *See Parra v. Astrue*, 481 F.3d 742, 751 (9th Cir. 2007); *Osenbrock v. Apfel*, 240 F.3d 1156, 1166 (9th Cir. 2001) (ALJ properly rejected excess symptom testimony where claimant had not been using a strong Codeine or Morphine based analgesic).

The ALJ's reasons for not crediting plaintiff's testimony regarding the severity of her headaches is reflected in the part of his decision explaining why he did not find plaintiff's headaches to be a severe impairment. The ALJ noted that plaintiff had visited a neurologist on one occasion in August 2015, who stated that he believed the majority of the claimant's pain was caused by her neck condition (and not her headaches). (*See* AR 18, citing AR 383.) The ALJ further noted that plaintiff had not seen a neurologist for this condition since; that her headaches were currently being managed by her primary care physician, with gabapentin daily; and that, in April 2017, plaintiff had reported an improvement in the condition due to this drug. (*See* AR 18, citing AR 568.) The ALJ also noted that plaintiff's medical record frequently stated that she presented with "no headaches," indicating a transient condition. (*See* AR 18, citing AR 350, 353, 356, 415, 421, 540, 546.) The ALJ reasoned that plaintiff's lack of specialist treatment of this condition, combined with her recent report that her current medication regimen helped, and the apparently transient nature of the condition, all led to the conclusion that plaintiff's headache condition was non-severe. In other words, the headaches did not significantly limit plaintiff's physical or mental ability to do basic work activities." *See* 20 C.F.R. § 404.1522(a). The Court finds that these reasons for not crediting plaintiff's testimony regarding the severity of her headaches satisfied the legal standard set forth above.

With respect to plaintiff's subjective symptom testimony relating to her mental impairments, the ALJ noted that the medications prescribed to manage plaintiff's

psychological conditions had remained consistent throughout the adjudication period, with recent decreases in plaintiff's clonazepam dosage suggesting an improvement in symptoms. *(See* AR 23, citing AR 451.) The ALJ further noted that both psychological conditions thus appeared to be well managed with just medication prescribed by plaintiff's primary care physician, as plaintiff had not visited a mental health professional since June 2016. *(See id.*, citing AR 344-62.) The ALJ also noted that, during plaintiff's most recent psychiatry visit in June 2016, her psychological conditions were described as "mild-moderate." *(See id.*, citing AR 345). The seeming efficacy of plaintiff's medication regimen also constituted a legally sufficient reason for not crediting plaintiff's testimony regarding the severity of her mental impairments under both the Commissioner's regulations and Ninth Circuit case law. *See* 20 C.F.R. § 404.1529(c)(3)(iv)-(v); *Warre v. Comm'r of Soc. Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006) (stating that "[i]mpairments that can be controlled effectively with medication are not disabling for purposes of determining eligibility for [social security] benefits").

The ALJ's other reasons for not crediting plaintiff's subjective symptom testimony relating to her mental impairments are reflected in the part of his decision explaining why he did not find plaintiff's mental impairments to be of listing level severity. The ALJ's reasons for not crediting plaintiff's testimony that she had difficulty remembering generally, understanding what was said to her, following instructions, and completing tasks were (a) plaintiff also stated that she could prepare meals, pay bills, go to doctor's appointments, take medications, shop, drive, and read; and (b) the record showed that plaintiff was able to provide information about her health, describe her prior work history, follow instructions from healthcare providers, and comply with treatment outside of a doctor's office or hospital. (*See* AR 19, citing AR 212-20, 240-41, 478-79, 598, 638.)

The ALJ's reasons for not crediting plaintiff's testimony that she had difficulty getting along with others were (a) according to her statements, plaintiff also was able to shop, spend time with friends and family, deal appropriately with authority, and live

15

with others; and (b) the medical evidence showed that plaintiff was generally described as pleasant and cooperative. (*See* AR 19, citing AR 238, 243, 244, 557, 560, 562, 565, 568, 571, 585, 588, 591.)

The ALJ's reasons for not crediting plaintiff's testimony that she had limitations in concentrating generally, focusing generally, and following instructions were (a) she also was able to drive, prepare meals, watch TV, read, manage funds, and use the internet; and (b) the record failed to show any mention of distractibility and an inability to complete testing that assessed concentration and attention, but rather frequently discussed plaintiff's attention and concentration as "intact." (*See* AR 19-20, citing AR 239-41, 474, 540, 543, 546.)

The Court therefore finds that the ALJ did provide clear and convincing reasons, supported by the substantial evidence of record, for not fully crediting plaintiff's subjective symptom testimony. Accordingly, the Court finds that reversal is not warranted based on the ALJ's alleged failure to properly consider plaintiff's subjective symptom testimony.

## D. Reversal is not warranted based on the ALJ's alleged error at step five of the sequential evaluation process.

In making disability determinations, the ALJ relies primarily on the DOT for "information about the requirements of work in the national economy." *Massachi v. Astrue*, 486 F.3d 1149, 1153 (9th Cir. 2007). "The DOT describes the requirements for each listed occupation, including the necessary General Education Development ('GED') levels; that is, 'aspects of education (formal and informal) . . . required of the worker for satisfactory job performance.'" *Zavalin v. Colvin*, 778 F.3d 842, 846 (9th Cir. 2015) (quoting DOT, App. C, 1991 WL 688702 (4th ed. 1991)). "The GED levels [include] the reasoning ability required to perform the job, ranging from Level 1 (which requires the least reasoning ability) to Level 6 (which requires the most)." *Id*. (citing DOT, App. C, 1991 WL 688702).

In addition to the DOT, the ALJ "uses testimony from vocational experts to obtain occupational evidence." *Massachi*, 486 F.3d at 1153; *see also Zavalin*, 778 F.3d at 846. Generally, the VE's testimony should be consistent with the DOT. *See* SSR 00-4p; *Massachi*, 486 F.3d at 1153. But when conflicts occur, neither the DOT nor the VE's evidence automatically trumps. *Massachi*, 486 F.3d at 1153. "Thus, the ALJ must first determine whether a conflict exists." *Id.*

"When there is an apparent conflict between the vocational expert's testimony and the DOT—for example, expert testimony that a claimant can perform an occupation involving DOT requirements that appear more than the claimant can handle—the ALJ is required to reconcile the inconsistency." *Zavalin*, 778 F.3d at 846 (citing *Massachi*, 486 F.3d at 1153-54). The ALJ must ask the VE whether his or her testimony conflicts with the DOT. *Massachi*, 486 F.3d at 1153-54. If it does conflict, "the ALJ must then determine whether the vocational expert's explanation for the conflict is reasonable and whether a basis exists for relying on the expert rather than the [DOT]." *Id.* at 1153.

Here, plaintiff contends that there was an apparent conflict between the VE's testimony and the DOT in that both jobs that the ALJ found plaintiff remained capable of performing require reasoning levels that exceed plaintiff's RFC.

With respect to the garment sorter job, plaintiff is mistaken. As plaintiff acknowledges, the DOT specifies that the garment job (DOT 222.687-014) requires a reasoning level of 2. There was no apparent conflict between the VE's testimony and the DOT because the ALJ found that plaintiff retained the RFC to perform "simple, routine, repetitive tasks" and courts in this Circuit regularly have concluded that an ability to perform simple and repetitive tasks is consistent with Reasoning Level 2. *See, e.g.*, *Hernandez v. Berryhill*, 707 F. App'x 456, 458–59 (9th Cir. 2017) ("There was no apparent conflict between the ALJ's residual functional capacity ('RFC') determination that [the claimant] was 'limited to simple, repetitive tasks' and the vocational expert's testimony that she could work as an envelope addresser, a job ... requiring 'Level 2' reasoning."); *Lara v. Astrue*, 305 F. Appx. 324, 326 (9th Cir. 2008) ("[S]omeone able to perform simple,

17

repetitive tasks is capable of ... Reasoning Level 2 jobs."); *Abrew v. Astrue*, 303 F. Appx. 567, 569 (9th Cir. 2008) ("[T]here was no conflict between the ALJ's step five determination that [the claimant] could complete only simple tasks and the vocational expert's testimony that [the claimant] could do jobs that [the DOT] categorizes at 'Reasoning Level 2.'"); *Coleman v. Astrue*, 2011 WL 781930, at *5 (C.D. Cal. Feb. 28, 2011) ("[T]he weight of prevailing authority precludes a finding of any inconsistency between a reasoning level of two and a mere limitation to simple, repetitive tasks or unskilled work.") (collecting cases)); *see also Harrington v. Astrue,* 2009 WL 102689, at *2 (S.D. Cal. Jan. 14, 2009) (simple, repetitive work is consistent with the definition of GED reasoning level two).

Accordingly, even if the ALJ did err by failing to reconcile the apparent conflict between the VE's testimony and the Reasoning Level 3 requirement of the document preparer job, *see Zavalin*, 778 F.3d at 847 (finding an apparent conflict between an ALJ's RFC determination that a claimant was limited to "simple, repetitive tasks" and a vocational expert's testimony that the claimant could perform jobs that required Level 3 reasoning), any such error was harmless. *See, e.g.*, *Mitchell v. Colvin*, 584 Fed. App'x 309, 312 (9th Cir. 2014) (finding that erroneous identification of job constituted harmless error where ALJ identified another that existed in significant numbers); *Brad H. v. Berryhill*, 2019 WL 1861310, at *7 (C.D. Cal. Apr. 25, 2019) ("Because this occupation independently satisfied the Commissioner's burden at step five, the ALJ's error in failing to resolve conflicts about the two other representative jobs was harmless."); *Camper v. Berryhill*, 2018 WL 542587, at *4 (C.D. Cal. Jan. 23, 2018) ("[E]ven if Plaintiff could not perform the other two positions identified by the vocational expert, . . . by properly identifying the storage/rental facility clerk position (180,000 jobs nationally), the ALJ has met his burden to demonstrate that Plaintiff could perform some work that exists in

"significant numbers" in the national or regional economy, taking into account Plaintiff's RFC . . . .").[5]

**RECOMMENDATION**

For the foregoing reasons, the Court **RECOMMENDS** that plaintiff's motion for summary judgment be **DENIED**, and that Judgment be entered affirming the decision of the Commissioner and dismissing this action with prejudice.

Any party having objections to the Court's proposed findings and recommendations shall serve and file specific written objections within 14 days after being served with a copy of this Report and Recommendation. *See* Fed. R. Civ. P. 72(b)(2). The objections should be captioned "Objections to Report and Recommendation." A party may respond to the other party's objections within 14 days after being served with a copy of the objections. *See id.*

IT IS SO ORDERED.

Dated: March 11, 2020

_____
ROBERT N. BLOCK
UNITED STATES MAGISTRATE JUDGE

---

[5] The VE testified that 35,000 garment sorter jobs existed in the national economy (*see* AR 78) and that his information about job numbers came from the Bureau of Labor Statistics (*see* AR 84). This number of jobs satisfied the Commissioner's step five burden of proving that plaintiff could perform an occupation existing in significant numbers in the national economy. *See Gutierrez v. Comm'r of Soc. Sec.*, 740 F.3d 519, 528-29 (9th Cir. 2014) (finding 25,000 national jobs to constitute a significant number of jobs).